UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Teresa M. Bushberger,
        Debtor.

Chapter 7
Case No. 17-21474-svk

## DECISION AND ORDER DETERMINING CLAIM IS PROPERTY OF THE ESTATE AND PERMITTING DEBTOR TO AMEND SCHEDULES

After her Chapter 7 bankruptcy case concluded, Teresa Bushberger (the "Debtor") filed an action against Midland Credit Management, Inc. ("Midland") in the United States District Court for the Eastern District of Wisconsin alleging violations of the Fair Debt Collection Practices Act (the "FDCPA action"). Because she did not schedule this potential claim in this bankruptcy case, she now seeks a determination that it is a post-petition claim and not property of the estate. Alternatively, she seeks to add the claim to her bankruptcy schedules and use her remaining exemptions to remove the full value of the claim from the estate.

### BACKGROUND

The Debtor filed this bankruptcy case on February 27, 2017. She did not list any potential FDCPA claims against Midland on Schedule A/B of her bankruptcy schedules, although she did list FDCPA claims against other creditors. The Chapter 7 Trustee reported that there was no property available for distribution from the estate beyond what the Debtor had exempted, and the Court issued a Chapter 7 discharge to the Debtor on June 6, 2017. The case was closed the same day.

On October 26, 2017, the Debtor filed the FDCPA action. The action related to a letter that was mailed to the Debtor in October 2016, before she filed the bankruptcy case. (Docket No. 12-1 at 10.) On February 14, 2018, Midland filed a motion to dismiss the FDCPA action, arguing in part that the Debtor did not have standing to bring the action because it was property

of the bankruptcy estate and only the bankruptcy trustee could prosecute the claim. Midland also argued that the Debtor was judicially estopped from prosecuting the claim because she did not disclose it in her bankruptcy schedules. The day after Midland filed its motion to dismiss the FDCPA action, the Debtor filed a motion to reopen her bankruptcy case to amend her schedules to list the claim.[1] Midland objected, and the Court scheduled a hearing. On March 7, 2018, the Debtor asked the District Court to deny Midland's motion to dismiss the FDCPA action or stay it pending resolution of the bankruptcy proceedings. After a hearing, this Court reopened the bankruptcy case for the sole purpose of determining whether the Debtor's claims against Midland are property of the estate.

The District Court then denied Midland's motion to dismiss the FDCPA action without prejudice, noting that "[i]t appears likely that the bankruptcy court's decision, whatever it may be, will moot Midland's motion to dismiss. At a minimum the bankruptcy court's decision stands to significantly undermine the relevance of the issues and arguments the parties present in their briefs." *Bushberger v. Midland Credit Mgmt., Inc.*, No. 17-cv-01468-WED (E.D. Wis. Mar. 26, 2018) (Docket No. 20.) The parties have briefed[2] the issues, and the matter is ripe for decision.

Although the Debtor received the offending letter before she filed her bankruptcy petition, she now argues that the FDCPA claim did not become part of her bankruptcy estate. Her attorneys did not believe that the letter violated the FDCPA at the time she filed her bankruptcy case. That opinion changed between the date the Debtor filed the case and the date

---

[1] The motion to reopen the bankruptcy case referred to an FDCPA claim and a Wisconsin Consumer Act claim. (Docket No. 12.) The parties' briefing discussed only the FDCPA claim, and this decision will solely address that claim.

[2] The Court notes that the Debtor's brief exceeded the page limit set in the Court's Local Rules and reminds Debtor's counsel that in the future, briefs should comply with the requirements set forth in Local Rule 9004(a), including the requirement that they not exceed 15 pages or 6,500 words, without Court approval.

2

Case 17-21474-svk    Doc 27    Filed 06/27/18    Page 2 of 8

she received her discharge, when the Seventh Circuit issued its decision in *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017). The Debtor's attorneys reevaluated the letter after she had received her discharge and concluded that it did violate the FDCPA in light of the new Seventh Circuit decision. They then filed the FDCPA action.

## DISCUSSION

The Debtor contends that her FDCPA claim only "obtained value" after the *Pantoja* decision. She argues a potential claim that has no value until after a bankruptcy petition is filed is not property of the estate: "an 'asset' with no value to the bankruptcy estate is not an asset." (Docket No. 24 at 10.) Relatedly, she argues she was not required to amend her schedules during the bankruptcy case to disclose the claim as soon as the *Pantoja* case was decided. Both of these assertions appear to confuse the value of the claim with the determination of whether it is property of the estate.

The test for whether a potential claim is property of the estate is separate from the question of the claim's value. Under § 541 of the Bankruptcy Code, the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," except as otherwise provided in the statute. The concept of property of the estate is extremely broad and includes legal claims a debtor possesses against other parties. *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000). The intent of § 541 "is to include all property rights of the debtor, even if that interest is contingent or speculative." *White v. Coyne, Schultz, Becker & Bauer, S.C. (In re Pawlak)*, 483 B.R. 169, 176 (Bankr. W.D. Wis. 2012). It is true that the "date of valuation of an asset for purposes of determining whether it can be exempted is the date on which the petition for bankruptcy is filed." *Polis*, 217 F.3d at 902. However, if a legal claim arises out of a transaction that occurred before the petition was filed, it becomes property of the bankruptcy estate. *Id.*

Because the *Pantoja* decision was issued after her bankruptcy petition date, the Debtor suggests that her FDCPA claim "had not accrued prior to the filing" of the bankruptcy case. (Docket No. 24 at 9.) However, the "'standard rule' is that a claim accrues 'when the plaintiff has a complete and present cause of action.'" *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Applying this rule, the cause of action accrued pre-petition. The Debtor acknowledges "she had received and been confused by [Midland's] letter months before filing her bankruptcy." (Docket No. 24 at 20.) Not only had the conduct necessary to complete the cause of action occurred before the Debtor filed bankruptcy, the Debtor was aware of the facts of the claim prior to the petition.

The Debtor's argument hinges on her attorneys' new legal theory: "the import of the *Pantoja II* decision on Plaintiff's case against [Midland] did not become apparent to Debtor or her attorneys until several months after the debts had been discharged." (*Id.*) She suggests that this timing renders the claim a post-petition claim that is not property of the estate.[3] As Midland points out, the Debtor offers no explanation as to how a new judicial decision affects the accrual date of a cause of action. Instead, her argument is that *Pantoja*'s "reasoning significantly changed the scope of 'misleading' under the FDCPA, holding that a facially ambiguous representation may mislead as a matter of law." (*Id.* at 2). Not surprisingly, Midland rejects the Debtor's reading of *Pantoja*. Regardless of the parties' opposing views of the merits of the decision, for purposes of this Court's determination, it is dispositive that the Debtor acknowledges that the Seventh Circuit decided *Pantoja* based on an interpretation of existing law.

---

[3] In her motion to reopen the bankruptcy case, however, the Debtor initially referred to the claim as a "pre-petition asset." (Docket No. 12.)

*Goldstein v. Stahl (In re Goldstein)*, 526 B.R. 13 (B.A.P. 9th Cir. 2015) is instructive as to the effect of subsequent judicial decisions on whether a claim is property of a bankruptcy estate. In that case, the Chapter 7 debtors argued that their causes of action against their mortgage lender arose post-petition and were not property of the bankruptcy estate. The debtors argued that the "state of the law" changed post-petition, and their right to a remedy was created by decisions issued after the petition date. The Bankruptcy Appellate Panel analyzed the decisions on which the debtors relied and determined that the courts reached their conclusions through an application of existing law. The B.A.P. concluded that the decisions "did not create new legal rights." *Id.* at 22. Rather, "[t]hey interpreted the respective borrowers' rights under state laws then in effect to consider the impact of HAMP [Home Affordable Modification Program] provisions and related agreements." *Id.* Importantly, the "plaintiffs in each case faced the same state of the law that the [debtors] complain they faced prepetition, but they persevered and eventually persuaded the reviewing courts to rule in their favor." *Id.* at 23. The debtors, "arguably, might have done the same." *Id.* The B.A.P. distinguished cases in which legislation enacted after the filing of a bankruptcy case created the rights at issue.

The Debtor's arguments fail for the very same reasons as the rejected arguments in *Goldstein*. Because the Debtor received the letter pre-petition, the Debtor's claim "involve[s] interpretation of the legal significance of the facts as they existed" before the petition. *Id.* The *Pantoja* decision did not create a new right that did not already exist when the Debtor filed bankruptcy. The unscheduled claim asserted in the FDCPA action was property of the Debtor's bankruptcy estate when she filed the case and still is. *See* 11 U.S.C. § 554(c), (d). If the asset had been scheduled and abandoned, the claim would have reverted to the Debtor with retroactive effect. *See Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) ("[W]hen property of the bankrupt is abandoned, the title 'reverts to the bankrupt, nunc pro tunc, so that he

5

is treated as having owned it continuously.'") (quoting *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964)).

Exempting the asset likely would not have a similar retroactive effect. *See Ball v. Nationscredit Fin. Servs. Corp.*, 207 B.R. 869, 872-73 (N.D. Ill. 1997). In *Ball*, the debtor's claimed exemption did not take effect until the 30-day objection period for the exemption passed and all objections were resolved. By that date, a Truth in Lending Act ("TILA") lawsuit had already been filed, but since the debtor's exemptions were not finalized, the court found she did not have standing to bring the suit. The court dismissed the TILA case for lack of standing, but indicated that the statute of limitations may have been tolled for various reasons, and stated that the dismissal was without prejudice.

In this case, anticipating the determination that the FDCPA action is property of the estate, the Debtor addresses the question of whether she should be permitted to file amended bankruptcy schedules disclosing the claim and asserting an exemption. She observes that several Seventh Circuit cases suggest she follow the procedure she has in fact employed, that is, moving to reopen the case, disclosing the asset, and claiming an exemption. In *Biesek v. Soo Line Railroad Co.*, 440 F.3d 410 (7th Cir. 2006), a debtor's bankruptcy schedules did not list any potential claims, even though he had retained counsel in connection with a Federal Employers' Liability Act ("FELA") claim and received a settlement offer before the bankruptcy case. In the FELA action, the district court applied judicial estoppel and granted summary judgment to the defendant. It later declined to reopen the judgment under Rule 60(b)(2) of the Federal Rules of Civil Procedure in response to a new stipulation under which the debtor would turn over a portion of any recovery in the action and the bankruptcy trustee would agree that the debtor's omission of the claim in the bankruptcy case was inadvertent. In affirming the district court, the Seventh Circuit noted in part that the debtor "did not accept the Trustee's invitation (extended in

6

October 2003) to amend the bankruptcy schedules, make the FELA claim available to the creditors, and use any personal exemption available under state law to shelter part of the recovery." *Id.* at 412. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357 (7th Cir. 2015) follows up on that statement. In that case, a debtor did not disclose any potential tort claims in his bankruptcy case, yet filed a tort suit after receiving a discharge. When the defendants moved for summary judgment, observing that the claim was not scheduled in the bankruptcy, the debtor notified the bankruptcy trustee. The trustee moved to reopen the bankruptcy case and replace the debtor as the plaintiff in the tort suit. The court noted that this was "the approach we had contemplated in *Biesek* as the appropriate way to deal with a legal asset omitted from bankruptcy schedules." *Id.* at 358.

Finally, in an earlier case, *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006), the court made a similar observation. A debtor failed to schedule an administrative claim against the Postal Service and filed suit after the bankruptcy case was over. In holding that judicial estoppel barred the debtor's suit, the court suggested that if the debtor "were really making an honest attempt to pay her debts, then as soon as she realized that it had been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery." *Id.* at 448. Admittedly, the instant case differs from these cases in that the Debtor would be able to exempt the entire value of the asset, assuming the value is what she claims. However, this may ultimately be a distinction without a difference, as any value beyond what the Debtor can exempt would be available to creditors.

The Debtor argues extensively that judicial estoppel should not apply to bar the FDCPA action. This argument should be addressed to the District Court. As *Biesek, Cannon-Stokes*, and *Metrou* suggest, it is for the court presiding over a subsequent legal proceeding to consider whether a plaintiff is able to prosecute an unscheduled lawsuit from an earlier bankruptcy case.

Although the reopened bankruptcy case is pending in this Court, the question of the Debtor's standing and application of the equitable principles of judicial estoppel are not. Rather, the only questions for this Court are whether the claim is property of the bankruptcy estate, and if so, whether the Debtor may amend her schedules to list it and claim it exempt.

In conclusion, for the reasons given, the Court answers both questions in the affirmative. The FDCPA claim remains property of the estate, and the Debtor may assert an exemption in the claim, with the caveat that parties in interest are entitled to object to the exemption. The exemption will not be final until the end of the 30-day objection period, assuming no objections are filed. All other questions presented in the FDCPA action are properly addressed by the District Court, including whether the Debtor had standing when she filed that action and whether she is judicially estopped from proceeding in the action. Accordingly,

IT IS THEREFORE ORDERED: the Court determines that the FDCPA action is property of the bankruptcy estate that the Debtor may schedule and claim exempt, subject to the rights of the creditors and trustee to object to the exemption.

Dated: June 27, 2018

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge